LONDON GUARANTEE AND ACCIDENT COM-
PANY, LIMITED, Respondent, v. MISSOURI
AND ILLINOIS COAL COMPANY, Appellant.

**St. Louis Court of Appeals, December 15, 1903.**

**INSURANCE: Agency: Authority to Change Rate: Waiver.** An
insurance agent whose duties extended no further than to
solicit risks and deliver policies, who had no right to pass
upon applications, countersign or issue policies, or collect
accruing premiums, was not authorized to change the rate of
premium in a policy negotiated by him, nor waive a condition
in the policy which provided that its provisions could not be
waived or altered unless by written consent of the general
manager of the company.

Appeal from St. Louis City Circuit Court.—*Hon. War-
wick Hough,* Judge.

AFFIRMED.

*Stewart, Cunningham & Eliot* for appellant.

(1) Before a valid contract of insurance is made
the premium to be paid must be agreed upon. Worth
v. Ins. Co., 64 Mo. App. 583; Wood on Fire Ins., 2d
Ed., vol. 1, p. 21. (2) Stipulations attached to a policy,
when delivered, and appearing on its face are taken as
embraced in and constituting part of the policy if they
appear anywhere on its face, though not written in the
body. Crigler v. Ins. Co., 49 Mo. App. 11. (3) A con-
tract of insurance is effected when the terms proposed
by the applicant for insurance in his application are
accepted by the insurance company. Keim v. Ins. Co.,
42 Mo. 38; Baldwin v. Ins. Co., 56 Mo. 151; Worth v.
Ins. Co., 64 Mo. App. 583. (4) Limitations contained

in a policy of insurance on the power of the agent to waive or alter conditions of the policy, refer to waivers or alterations made after the contract of insurance has been made and gone into operation, and not to waivers and alterations made before the contract has been consummated. Rickey v. Ins. Co., 79 Mo. App. 485; Woolridge v. Ins. Co., 69 Mo. App. 351; Flournoy v. Ins. Co., 80 Mo. App. 655; Shoup v. Ins. Co., 51 Mo. App. 286. (5) An insurance agent will be taken and assumed to have power to do that which is within the range of the apparent authority with which the company has clothed him. Jackson v. Ins. Co., 27 Mo. App. 62. (6) Foreign insurance companies are held bound to the fullest extent the law will allow for the acts of their agents appointed to represent them in their agencies abroad. Franklin v. Fire Ins. Co., 42 Mo. 461; Burdick v. Life Assn., 77 Mo. App. 633; Schmidt v. Ins. Co., 2 Mo. App. 343; McCollum v. Ins. Co., 67 Mo. App. 76, 81. (7) An insurance company is responsible for the acts of its agent's clerk or other person to whom he delegates authority to discharge his functions for him, if the company knew or ought to have known that other persons would be employed by and to act for the agent. Woods on Fire Ins. (2 Ed.), p. 921; Bodine v. Ins. Co., 51 N. Y. 566; Lingenfelter v. Ins. Co., 19 Mo. App. 253, 265. (8) A limitation in an insurance policy that "no condition or provision of this policy shall be waived or altered by any one, unless by written consent of the general manager of the company for the United States of America, nor shall any notice to any agent, nor shall any knowledge possessed by any agent, or by any other person be held to effect a waiver or change in this contract or any part of it," may be waived, by subsequent power, written or parol, conferred on the agent, or a waiver may be necessarily implied from the conduct of the company, or of the agent with its knowledge, and from their course of business with the assured. Thompson v. Ins. Co., 169 Mo. 12; Laundry Co. v. Ins. Co.,

151 Mo. 90; Rissler v. Ins. Co., 150 Mo. 366; Nickell v. Ins. Co., 144 Mo. 420; Parsons v. Ins. Co., 132 Mo. 583; O'Brien v. Ins. Co., 95 Mo. App. 307; Mellis v. Ins. Co.. 95 Mo. App. 211; Bradley v. Ins. Co., 90 Mo. App. 369; Wolff v. Ins. Co., 86 Mo. App. 580; Turner v. Ins. Co., 86 Mo. App. 387.

*Robert A. Holland, Jr.,* for respondent.

(1) As agent Moreton's authority was limited to soliciting insurance and collecting premiums, he had no authority to alter the terms of a policy of insurance. White v. Massey, 65 Mo. App. 260; Mensing v. Ins. Co., 36 Mo. App. 602; Ins. Co. v. Fletcher, 117 U. S. 516; Greenwood v. Ins. Co., 27 Mo. App. 401; Ins. Co. v. Wolf, 95 U. S. 329; Ins. Co. v. Norton, 96 U. S. 240; Loehner v. Ins. Co., 17 Mo. 247; Ryan v. Ins. Co., 41 Conn. 168; Ins. Co. v. Neiberger, 74 Mo. 167; Richardson v. Ins. Co., 46 Me. 394. (2) The court therefore did not err in rejecting the letter written by agent Moreton, in which he stated that a premium of forty cents should be substituted for the sixty-five-cent premium mentioned in the application for insurance and in the policy of insurance. (a) Because there was no evidence that agent Moreton had any authority to sign the name of agent Case to said letter. (b) Because there was no evidence that either said Moreton or said Case had authority to alter the terms of the policy. See authorities under heading 1, supra. (c) Because the effort to substitute said rate was a fraud and will not be enforced. Ins. Co. v. Fletcher, 117 U. S. 530.

### STATEMENT.

This case and the similar case of the same plaintiff against the Scott-Wilson Coal Company, were submitted together to the court as a jury. The petition in this case alleged:

"On November 20, 1899, defendant made an application in writing to plaintiff for an employer's liability policy to protect defendant aganst claims growing out of personal injuries sustained by its employees through negligence of defendant, and agreed to pay for said insurance policy at the rate of sixty-five cents per one hundred dollars of wages expended; that on the same day a policy was issued, pursuant to said application, and delivered to defendant which policy was to be in force for a period of twelve months from said date, and was so in force; that at the time said policy was issued defendant estimated its probable pay roll at $30,000 and thereupon paid plaintiff $195.00, being the premium at the rate of sixty-five cents per one hundred dollars of wages on an estimated pay roll of $30,000; that defendant further agreed that in case its pay roll exceeded said estimated pay roll of $30,000, it would, at the end of said year, beginning November 20, 1899, and ending November 20, 1900, pay to plaintiff a premium at the rate of sixty-five cents per one hundred dollars in excess of wages paid over and above said $30,000; that defendant's pay roll during said year did exceed the sum of $30,000, and that it amounted to $100,000; that the excess pay roll over and above the estimated pay roll was $70,000, upon which no premium whatever has been paid by defendant, and that at the agreed rate of sixty-five cents per one hundred dollars, said unearned premium would amount to four hundred and fifty-five dollars."

The second count of the petition stated:

"That at the expiration of the year, to-wit, twentieth day of November, 1900, plaintiff delivered to defendant a binder, running ten days from said date, by which plaintiff extended the insurance under said policy for a period of ten days, and under the same conditions expressed in said policy; that defendant agreed to pay for same at the rate of sixty-five cents per one hundred dollars of wages paid; that the wages paid by defendant during said ten days amounted to $2,777, and

the premium due thereon amounted to $17.05, which amount has never been paid by defendant.''

The answer admitted that:

''Plaintiff did deliver to defendant on the twenty-fourth day of November, 1899, an employer's liability policy, and that together with said policy and contemporaneously therewith the plaintiff delivered to defendant its agreement in writing (which was filed with the answer) attached to and becoming part of the said policy, by which the plaintiff agreed that the premium rate to be paid by the defendant for said policy should be forty cents per $100 of defendant's pay roll during the period of one year covered by the policy; that by agreement the policy was extended for ten days beyond the year mentioned; that the total compensation due to plaintiff was the sum of $411.11, of which defendant paid $195; that there remained due the plaintiff the sum of $216.11; for which sum, with interest, defendant offered to allow plaintiff to take judgment, and formal offer to that effect was made by defendant, as provided for in Sec. 751, R. S. of Missouri, 1899.''

By its reply plaintiff denied that it ever delivered to defendant the additional agreement making the premium forty cents per one hundred dollars wages, instead of sixty-five cents, and denied under oath that any such agreement was executed by the plaintiff, or that it was signed by any one having authority to execute such an agreement for the plaintiff.

The testimony consisted first, of the application for the insurance, addressed to plaintiff, containing the following pertinent portions:

''Dated Nov. 20, 1899.
Term 12 Mon.
Expiration Nov. 20, 1900.
Eestimated annual wages, $30,000.

Liability Limits:

One person, $5,000.

One accident, $10,000.

Premium, $195.00.

The estimated expenditures for wages for the time of this policy is $30,000. The premium rate is sixty-five cents for each $100 of wages.

Rate, 65c.

(Signed) Missouri & Illinois Coal Co.,

By W. S. Scott,

Vice-President.

Dated Nov. 20, 1899.

Broker, R. R. W.

General Agent, F. C. Case."

The policy was introduced and contained especially the following provisions:

"No condition or provision of this policy shall be waived or altered by any one unless by written consent of the general manager of the company for the United States of America, nor shall notice to 'any agent nor shall knowledge possessed by any agent, or by any other person be held to effect a waiver or change in this contract or any part of it.

"C. The premium is based on the compensation to employees to be expended by the assured during the period of this policy. If the compensation actually paid exceeds the sum stated in the schedule hereinafter given the assured shall pay the additional premium earned; if less than the sum stated the company will return to the assured the unearned premium pro rata; but the company shall first retain not less than fifty dollars ($50.00) it being understood and agreed that this sum shall be the minimum earned premium under this policy.

"F. The statements contained the schedule hereinafter given are hereby made a part of this contract, which statements the assured makes on the acceptance

of this policy and warrants to be true, saving as to matters which are declared to be matters of estimate only.''

Here follows a schedule, being a copy of the application above mentioned, which contains the following provision:

"12.   The estimated expenditure for wages for the term of this policy is $30,000.   The premium rate is 65 cents for each $100 of wages.   The minimum premium is $50.00.''

After the introduction of above instruments, it was admitted that the pay roll of defendant during the year of the life of the policy was $100,000 and during the term of the binder, $2,277, the total being $102,277, and the premium of $195.00 had been paid on the pay roll estimated, $30,000, at rate of 65 cents per $100; the excess pay roll, therefore, upon which no premium had been paid was $72,277.   Defendant's vice president and general manager deposed on its behalf that he had conducted the negotiations for the insurance solely with one Moreton, who had delivered the policy, and admitted he knew the application, signed by him, and the policy both recited the rate to be 65 cents per $100, and in reading the policy he had observed the limitation upon the authority of agents and that the application was incorporated in the policy.   That he had paid a cash premium of $195, at rate of 65 cents on the estimated pay roll.   That when the policy was delivered, the following letter was delivered to him in connection therewith:

"London Guarantee and Accident Company, Limited,
     of London, England.   United States Branch:
                    Head Office, Chicago, Ill.
              A. W. Masters, General Manager.
FRANK C. CASE,
     General Agent, 117 North Third St., St. Louis, Mo.
R. REYNOLDS-MORETON,
     Resident Manager, Telephone, Main 1549.

St. Louis, Mo., November 24, 1899.
Scott-Wilson Coal Co., Missouri and Illinois Coal Co.,
    City.

Dear Sirs: It is understood and agreed that the policies issued at your request, bearing dates of November 9th and 20th, in the above company, shall at the expiration of same be taxed only at the rate of forty cents per $100 of pay roll expended.

                    Yours truly,
                    FRANK C. CASE, General Agent.
                        R. REYNOLDS-MORETON.''

This letter was excluded by the court; the objection made thereto being that it bore a date subsequent to that of the policy; that it was not shown who Moreton was, or what authority he or Case had to write such a letter, and if Case had signed it that he had any authority so to do, and the court's attention was directed to the clause of the policy prohibiting the waiver or alteration of any of its conditions or provisions, except by written consent of the general manager for the United States, nor should notice to or knowledge of any agent or other person be held to effect a waiver or change in the contract or any part of it. This witness further testified that he knew Case and he was the general agent of the company, and he had no notice that Moreton's authority was limited otherwise than by the notice in the policy. The deposition of George D. Webb, taken on behalf of plaintiff, was then read in evidence by the defendant, who testified that he was general agent of plaintiff for several States, Missouri included; that Case was appointed by witness as general agent for the city of St. Louis to solicit insurance, receive applications, countersign and deliver policies, collect and remit premiums; that Case had no authority, nor had he, to deponent's knowledge, waived any conditions of the policies. That in the regular course of business, Case would receive an application for insurance, and transmit it to the office

of witness at Chicago, and policies were then issued by deponent's firm and sent to Case for signature of the latter and delivery to the assured. That neither Case nor Moreton had any authority to change any rate mentioned in the policy, nor had they with knowledge or approval of witness altered any of its conditions. That arrangements were made with Moreton in the presence of the witness, and his authority was confined to soliciting insurance and delivering policies. This witness further stated that his firm had authority to issue and countersign policies, appoint agents for that purpose and to collect and remit premiums, but had no authority whatever, to waive any of the printed terms of the policy, or to delegate such authority to any agent, and that Moreton derived all his authority from Case. The defendant had interposed objections to much of the testimony of the witness, especially to any special instructions of secret authority of Case, on the ground that defendant had dealt with him in the capacity of a general agent as he was held out by the plaintiff so to be; also objections to the questions whether Case had ever waived or changed any condition of the written policies, to the knowledge of Webb, and what was the regular channel through which a policy would pass from the time its application was received by Case; also renewing objection to the questions whether Case as, general agent or Moreton, had authority to change the rate mentioned in the policy. This witness further deposed that Moreton was employed as a soliciting agent and for the sake of dignity was given title of resident manager; that defendant's policy was prepared in the office of witness and sent to Case for signature by him as general agent and delivery. On cross-examination, it was elicited that Moreton had been in the employ of plaintiff two years and witness had received and approved policies solicited by him and received premiums thereon. The witness identified the paper adopted for the letter of date November 24, 1899, as one of the letter-heads

used by Case in his correspondence with witness, and one of the letter-heads furnished by witness to Case, printed or prepared by the company for Case's use, and also identified Moreton's signature, but denied ever having seen or heard of the above letter. Defendant thereupon requested the court to state in writing the conclusions of fact in form following: ·

"Now comes the defendant in the above entitled cause and moves the court, sitting as a jury to state in writing , the conclusions of facts found by it separately from the conclusions of law, in conformity with section 695, the Revised Statutes of Missouri, 1899.

"And in conformity with the evidence adduced, the defendant moves the court to make the following findings of fact separately:

"1. That W. S. Scott is a credible witness and stands unimpeached in the case.

"2. That the plaintiff held out to the public that R. Reynolds-Moreton was resident manager of the business of the plaintiff in the city of St. Louis, Missouri.

"3. That R. Reynolds-Moreton had authority from the plaintiff to solicit of the defendant the ·purchase or acceptance of the accident insurance.

"4. That R. Reynolds-Moreton had authority from the plaintiff to negotiate with defendant for accident insurance in the plaintiff company, and to state the rate of premium which would be charged.

"5. That R. Reynolds-Moreton had authority to deliver a policy of insurance of the plaintiff company to the defendant.

"6. That R. Reynolds-Moreton had apparent authority given him by the plaintiff to manage the business of the plaintiff company in St. Louis.

"7. That R. Reynolds-Moreton had apparent authorty to make a contract of insurance on behalf of the plaintiff with the defendant.

"8. That there was no evidence at the trial that the plaintiff company accepted the defendant's applica-

tion, if such application was made, except through R. Reynolds-Moreton, as its agent.

"9.    That there was no evidence at the trial that the plaintiff accepted the defendant's application at any other time than on the twenty-fourth day of November, 1899.

"10.    That the plaintiff never delivered the policy of insurance sued upon in this case to the defendant, otherwise than through R. Reynolds-Moreton as its agent or otherwise by his act.

"11.    That the plaintiff never delivered the policy of insurance sued on to the defendant except with the memorandum attached, dated November 24, 1899, excluded from the evidence by the court.

"12.    That the policy sued upon contained terms and conditions not referred to or mentioned in the application.

"13.    That the defendant never accepted the policy sued on in any other form, or under any other conditions than as the same was delivered to it by R. Reynolds-Moreton.

"14.    That the defendant never accepted the policy sued on, except with the memorandum of November 24, 1899, attached.

"15.    That R. Reynolds-Moreton, delivered to the defendant contemporaneously with, and as a part of the same transaction, with the policy, a memorandum in writing, dated November 24, 1899, addressed to the defendant, signed by R. Reynolds-Moreton for F. C. Case, general agent of the plaintiff company in the following form:

"London Guarantee and Accident Company, Limited, of London, England.    United States Branch:
Head Office, Chicago, Ill.
A. W. Masters, General Manager.
FRANK C. CASE,
General Agent, 117 North Third St., St. Louis, Mo.

R. REYNOLDS-MORETON,
    Resident Manager, Telephone, Main 1549. ·
                    St. Louis, Mo., November 24, 1899.
.Scott-Wilson Coal Co., Missouri and Illinois Coal Co.,
    City.

Dear Sirs: It is understood and agreed that the policies issued at your request, bearing dates of November 9th and 20th, in the above company, shall at the expiration of same be taxable only at the rate of forty cents per $100 of pay roll expended.

                    Yours truly,
                    FRANK C. CASE, General Agent.
                        R. REYNOLDS-MORETON.''

"16. That the plaintiff company employed Frank C. Case as its general agent for the conduct of its business in St. Louis:

"17. That Frank C. Case had apparent authority to manage the business of the plaintiff company in St. Louis.

"18. That there is no evidence in this case that Frank C. Case, as general agent of the plaintiff company ever delivered the policy of insurance sued upon to the defendant except through R. Reynolds-Moreton, as his representative, or under any other conditions than with the memorandum of November 24, 1899, attached thereto.

"And the defendant moves the court to make the following declarations of law among its conclusions of law in this case:

"The court declares the law to be that there is no contract between persons, unless their assent is given to the same thing; that an application for insurance is not binding in respect to its terms upon the applicant, unless accepted by the company; that an acceptance of an application for insurance by an insurance company, is not binding upon the applicant unless such acceptance is communicated to the applicant; that if all the terms of

a policy of insurance are not included in the form of the application, no contract of insurance can exist thereon, until the policy has been accepted by the applicant; that no contract is binding until the same has been delivered; that an acceptance of a policy of insurance upon a condition expressed by the receiver is not in law an acceptance of a policy of insurance unconditionally; that the physical possession of a policy does not establish its delivery to the person holding the same, if the evidence discloses that when the same was received by him, a second supplemental contract in terms purporting to modify the policy, was received by him at the same time, and as a part of the same transaction.

"And the defendant moves the court to make the following declaration of law.

"That an insurance campany is bound by the acts of any person whom it has made its agent, within the scope of the authority which he is held out by the company to have; that when an insurance company holds out to the public that a certain person is 'resident manager' of the company in a certain city, the public has a right to presume that such person has full and complete authority to conduct the business of the company, whatsoever that may be in that city; that an agent of an insurance company, who has authority to solicit insurance, and to deliver policies, has presumed authority which the public has a right to rely upon, to waive the terms of the policy, or to change or modify the terms of the proposed contract; that the actual authority given an agent of an insurance company is immaterial and not binding upon a person dealing with the company, unless notice of the limitation of authority is given, so long as the agent acts within the scope of the apparent authority with which he is clothed.

"And the defendant moves the court to make the following declaration of law:

"A condition contained in an insurance policy to the effect that no person can waive or alter its provisions

except the general agent of the company for the United States, is void, if it appears that the insurance was solicited by another person as agent of the company, and the policy was entrusted to him for delivery, and that person undertook to and did waive any condition thereof.

"And the defendant moves the court to make the following declaration of law:

"Upon the entire evidence adduced in this case, the court declares that the plaintiff is not entitled to recover a sum greater than two hundred and sixteen and 10-100 dollars with interest at six per cent per annum, from the eleventh day of April, 1901."

This motion was overruled and the court rendered judgment for plaintiff for the amount claimed, filing the following as its finding of law and fact:

"1.   The court finds that defendant in this suit executed and delivered to the plaintiff an application for employer's liability insurance, said application being dated November —, 1899; that the said application contained a statement that the estimated pay roll of the defendant was $30,000, and that the premium rate was to be 65 cents for each one hundred dollars of wages.

"2.   The court further finds that in November, 1899 plaintiff delivered to defendant a policy of employer's liability insurance, and that said policy was in force from November 20, 1899, to November 20, 1900.

"3.   The court further finds that said policy provides that the premium to be paid by defendant for said insurance was at the rate of 65 cents per one hundred dollars of wages expended by defendant to its employees during said year.

"4.   And the court further finds that the total pay roll of defendant during said year amounted to $100,000.

"5.   The court further finds that according to the terms of said policy, the pay roll of defendant during said period was estimated at $30,000, and that the defendant paid plaintiff within a few months after the said policy was issued the sum of $195, being a premium at

the rate of 65 cents per $100 of said estimated pay roll of $30,000.

"6. The court finds that the excess pay roll of defendant during said year, that is, the pay roll over and above the said estimated pay roll of $30,000 was $70,000; that the premium due on said excess pay roll was $455; that said amount was due on the twentieth day of November, 1900; and that plaintiff is entitled to said amount with interest to the date of judgment.

"7. The court further finds that on or about the twentieth day of November, 1900, the plaintiff delivered to defendant, a binder, by which the said employer's liability insurance was extended from the twentieth day of November, 1900, to the thirtieth day of November, 1900, and by the terms of said binder the defendant was to pay the plaintiff a premium at the rate of 65 cents per $100 of wages expended by defendant to its employees during said ten days; that said pay roll of defendant during said period amounted to $2,777; that plaintiff is entitled to recover from defendant for premium on said binder during said period $18.05, with interest from November 30, 1900.

"8. The court finds that the said clause of said policy which fixes the premium at 65 cents per $100 of wages was never waived or altered by the parties.

"And the court declares the law to be that on the foregoing facts the plaintiff is entitled to recover from the defendant the sum of $537.10."

REYBURN, J. (after stating the facts as above) — From the preceding recapitulation of the facts, it is obvious that the sole question in issue was the premium rate to be paid. An eminent author, in his treatise upon the law of fire insurance, which is recognized as a leading authority upon the subject, enunciates the rule, that in order to create a valid contract of insurance the following elements must coexist, namely: the subject-matter, to which the policy is to attach; the risk insured

against; the amount of indemnity definitely fixed, the duration of the risk and the consideration to be paid for the insurance agreed upon. Wood, Fire Ins., 1 vol. (2 Ed.), sec. 5. This court, in Worth v. Ins. Co., 64 Mo. App. 583, approved and adopted the foregoing rule. The appellant with plausible, if not convincing, reasoning submits that the respondent has failed to establish a contract of insurance embracing the concurrence of these essential conditions, but it is content to waive such position, if tenable and confine its reliance for reversal to the proposition that the rate of premium was established at forty cents per $100 of the pay roll. The ultimate question, sharply defined and controlling this controversy, is whether the sub-agent, Moreton, had authority to modify the terms of the proposed contract by a reduction in the rate of the insurance premium. As a general rule such indemnifying agreement is perfected and becomes valid, upon the acceptance, by the company, of the application by the insured, and the execution of the policy embodying the contract. Keim v. Ins. Co., 42 Mo. 38. The policy issued to appellant by respondent conformed to the application, and by its provisions the latter constituted a part of the policy, and both were based upon the higher premium rate, at which the cash installment was computed, and paid by appellant without protest or comment. If, therefore, the contract was not consummated at the rate fixed, alike by the application and the policy issued thereunder, the original proposition was impliedly abandoned or declined by respondent, and a counter and new proposition, differing from the contract first contemplated by the parties in the material respect of a substantial reduction of the premium rate, was submitted to appellant and accepted by it, and the question is resolved into the inquiry whether Moreton either was deputized with the express power, or was held out by respondent to have the authority to negotiate, consummate and substitute such new agreement in lieu

of the first contract.    There is no room to infer from the evidence, that any such right to so obligate respondent existed, unless by implication resulting from the conduct of respondent.    No such authority could justly be deduced from the mere knowledge by Webb, that Moreton was acting as a sub-agent under Case, soliciting risks for respondent, or that risks, accepted by the respondent through Webb, had been secured by Moreton.    No issue is presented affecting the range of the authority of Case, express or implied, for there was no proof that Moreton had any authority to sign Case's name to the letter, and the letter is entitled to no greater weight or consideration than if it bore Moreton's signature alone.    The ultimate test is not whether Moreton had power to modify the terms, or waive performance of conditions of a pre-existing contract, but the issue is whether Moreton was authorized to set aside, and ignore the premium rate named in appellant's application, formally accepted by and carried into the policy delivered to appellant, and substitute a much lower rate.    If Moreton's agency was sufficient to warrant a departure from the provisions of the policy by a reduction of the premium rate, then his power could not be denied to vary the terms of the contract in any other material direction, and not merely modify a single provision, but deviate therefrom as far as he chose, and in effect obligate the plaintiff to any form of liability he saw fit to impose.  · It may be conceded, as appellant contends, that the courts of this State have construed the authority of agents of foreign insurance corporations quite broadly, and even to the length of transmitting a greater measure of power than possessed by agents of companies organized in this State.    Schmidt v. Ins. Co., 2 Mo. App. 339; Franklin v. Ins. Co., 42 Mo. 456; Burdick v. Ins. Co., 77 Mo. App. 629.    Nor has been disregarded the full extent, to which the scope of the agency of general agents of insurance companies has been  expansively  interpreted  by  the courts of this State, in the decisions cited by appellant,

and other cases that might be invoked; amongst the latest additional expressions of the appellate courts, the cases of Ross-Langford v. Ins. Co., 97 Mo. App. 79, and Thompson v. Ins. Co., 169 Mo. 12, may be adverted to, in both of which, after elaborate discussion and review of the authorities, it was ruled that insurance corporations like individuals, may by parol or in writing, modify or enlarge the powers of their agents, or by their conduct and course of business dealings estop themselves from denying the power of such agents to waive forfeitures, proofs and the like, notwithstanding limitations of authority in the appointments, and in general, that the acts of the insurance agent will bind his principal within the bounds of the apparent authority, which the company appears to have committed to him. But these cases relate to existing contracts, the original validity of which were not impeached or assailed, and an examination of this line of authorities will also reveal that the agents whose conduct was relied upon as waiving the requirements of the policies, are usually policy-writing or general agents of the companies affected. We have found no decision, nor have we been referred to any case in this State or elsewhere, holding that an agent of such circumscribed power may alter or waive conditions of such a contract. The person whose action is here involved, is not declared to have either the title or powers of a policy-writing or general agent; the record discloses that his duties extended no farther than to solicit risks and deliver policies, and that he manifestly had no right to pass upon applications, countersign or issue policies, nor even to collect the accruing premiums. Given the greatest weight deserved, the title in the letter-head was but a circumstance to be considered in connection with the other evidence, and not a fact conclusive of unlimited authority. The power of a principal, corporate or individual, to restrict the authority of an agent, and to define the limits of his agency has been recognized and upheld by the courts of this State in Lama v. Ins. Co.,

51 Mo. App. 447; and in what is probably the most recent case upon the subject from the Supreme Court, the opinion expressly disavows that the rule alluded to above and now firmly established in this State, as well as other States, impairs the power of the principal to limit the authority of his agent, and expressly disclaims that it tends to bind the principal for the unauthorized acts of the agent in excess of the power conferred, but declares, on the contrary, that it holds the principal liable only so far as he has made himself responsible, but measures the responsibility of the principal for the acts of the agent, not alone by the terms of the original power but also by subsequent express authority or powers implied from the conduct of the principal or of his agent, with his knowledge, and from their course of business with third persons, which estop the principal from repudiating the right of the agent to perform the particular act relied on, although the power to take such action was not only not conferred but expressly denied by the terms of the original agency.    Thompson v. Ins. Co., 169 Mo. 12.

The eighth finding of facts by the trial court is to the effect that the clause of the policy fixing the premium rate at sixty-five cents per $100 of wages, was never waived or altered by the parties.    This finding, as well as those anterior, imports that the court found against the theory that Moreton had been held out by the insurance company as an agent with power to do more than solicit insurance and deliver the policies therefor. This conclusion finds abundant support in the evidence, although the testimony might be deemed conflicting, and will not be distrubed.

The judgment is affirmed.    *Bland, P. J.,* and *Goode, J.,* concur.