## London Guaranty & Accident Company, Limited, v. Bernhard Hartman, et al.

1. WAIVER—*when authority to waive condition of policy appears.* Where it appears that an employee of an insurance company had power to and did solicit insurance, take applications, deliver policies and collect premiums, his relation to the company is such that his action in waiving a condition of the policy as to the payment of further premium than that expressed in the policy by a written agreement attached thereto prior to the delivery of the policy and the payment of the premium, is binding upon the company.

Action of assumpsit. Appeal from the Circuit Court of St. Clair County; the HON. R. D. W. HOLDER, Judge, presiding. Heard in this court at the February term, 1905. Affirmed. Opinion filed September 8, 1905.

WISE & MCNULTY, for appellant.

JAMES M. DILL, for appellees.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

This was a suit brought by appellant to recover a balance claimed to be due it on an employer's liability policy, issued by it to appellees, February 6, 1900. The evidence in the records shows that at the time the policy was issued, Frank C. Case, residing in St. Louis, Missouri, was general agent for appellant for that city, and the vicinity. Case had in his employ one R. Reynolds Moreton, who was engaged in soliciting insurance under Case, for appellant, and at times delivered the policies and collected the premiums. A short time prior to the date of the policy, Moreton called on Mr. Wangelin, the manager for appellees, who were engaged in the manufacture of nails in Belleville, Illinois, and had a number of employees, and solicited him to take out an employer's liability policy for his principals. In regard to the premium to be paid, Moreton told him there was an agreed rate among all insurance companies. Wangelin then said there was no use to go any further, as he had an uncle in the insurance business and on equal figures would give him the business. Moreton replied that he would make it unequal, and said further, "I can make a flat rate based on $22,500 pay roll. I can make a flat rate of sixty cents, $135, but you will not get anything back if you don't owe that much. If your pay roll runs over you don't have to pay any more." Wangelin then said, "Under those conditions, then, I will sign your application," and proceeded to do so. The application signed by Wangelin stated that the number of employees "varies," the total expenditure of wages for the last calendar year ending December 31, 1899, was $22,500; the estimated expenditure for wages for the term of the policy was $22,500 and the premium rate was to be sixty cents for each $100 of wages and the policy was to begin February 6, 1900.

Moreton took the application away with him and on Feb-

ruary 13th brought back a policy which stated that for a premium of $135 appellant insured appellees for a period of one year from noon on February 6, 1900, against loss from common law or statutory liability, for damages on account of bodily injuries accidentally suffered by an employee of the insured within the period of the policy. It also contained the following provisions : " the premium is based on the compensation to employees to be expended by the assured during the period of this policy. If the compensation actually paid exceeds the sum stated in the schedule hereinafter given, the assured shall pay the additional premium earned; if less than the sum stated the company will return to the assured the unearned premium *pro rata;* but the company shall first retain not less than $25, it being understood and agreed that this sum shall be the minimum earned premium under this policy; " and " no condition or provision of this policy shall be waived or altered by any one unless by written consent of the general manager of the company for the United States of America, nor shall notice to any agent, nor shall knowledge possessed by any agent or by any other person, be held to effect a waiver or change in this contract or any part of it." It also contained a schedule, which was a copy of the application signed by Wangelin, and an agreement that the statements contained in the schedule should be made a part of the contract, that such statements were made by the assured on the acceptance of the policy and warranted to be true except as to matters declared to be matters of estimate only.

Wangelin looked at the policy and finding it did not provide for the flat rate agreed upon, refused to accept it. Moreton said: " Well, I could not put that in the policy previous to this as it has to pass through a board and if they found out that we violated our agreement, we have a forfeit up and we will be fined so much for writing policies under the rate. If you will sit down I will dictate the agreement and it can be attached to that policy." Wangelin thereupon wrote the agreement in duplicate at the dictation of Moreton and one of the same having been

signed by Moreton was attached to the policy which was afterwards delivered to Wangelin. Said agreement was as follows :

"BELLEVILLE, ILL., Feb. 13, 1900.

It is hereby understood and agreed that the cost of policy number 243,188 in the London Guaranty and Accident Company to the assured shall not at expiration of same, exceed the initial cost of $135 irrespective of excess expenditure of pay roll, neither shall any conditions make the policy cost less than the initial price of $135.

Attached to and forming a part of policy number 243,188 of the London Guaranty and Accident Company.

LONDON GUARANTY AND ACCIDENT COMPANY,
Per R. Reynolds Moreton,
Res. Mngr."

It also appeared that when the policy was delivered it had attached to it a slip of paper reading as follows :

"FRANK C. CASE, General Agent,
117 North Third Street.    St. Louis, Mo.
R. REYNOLDS MORETON,
Resident Manager."

After the policy was delivered to and accepted by Wangelin he gave Moreton a check for $135 the amount of the premium named therein. During the year the policy was in force, appellees sustained no losses thereunder and appellant was therefore not called upon to pay any indemnity.

On January 2, 1902, appellant commenced suit to recover the additional premium claimed to have been earned by it under the provisions of the policy, over and above the $135 actually paid, upon the ground that the compensation paid by appellees to their employees exceeded the sum stated in the schedule given in the policy.

The declaration, which was in assumpsit, contained a special count upon the policy and the common counts. Appellees filed a plea of the general issue.

On the trial it was agreed that the amount paid as wages by appellees to their employees, during the period the policy was in force, was $53,000. Appellant claimed that it was entitled to additional premium at the rate of sixty

cents on the $100, on the difference between $22,500, the amount named in the application and schedule as being the estimated expenditure of wages, and $53,000, the actual amount expended during the term of the policy, which would amount to $183.

Appellees' defense was based upon the written agreement above referred to, signed and attached to the policy by Moreton. Appellant showed on the trial, by A. W. Masters, its general manager for the United States, that he had given no consent to Moreton or any one else to waive any of the conditions in the policy issued to appellees. George D. Webb, a member of the firm, which had the general agency of appellant for the States of Illinois, Missouri and Indiana, stated, that his firm had never given any authority to Case or Moreton to waive any of said conditions, and F. C. Case himself testified tha the never instructed, authorized or empowered Moreton to waive or alter any of such conditions.

Upon the trial a jury was waived and the evidence heard by the court, which found the issues for appellee and entered judgment against appellant for costs.

Appellant contends that the court improperly admitted the paper slip signed by Moreton and attached to the policy, which provided for a flat rate of $135, and also evidence of the conversation between Wangelin and Moreton at the time the application was made and when the policy was delivered, for the reason that there was a written application which stated that "the premium rate is sixty cents for each $100 of wages" and the statements contained in the application were made a part of the policy. The printed slip was part of the policy when the same was delivered to and received by Wangelin, and being a part thereof it was proper for the court to admit it in evidence with the rest of the policy and it devolved upon appellant to show, why it was of no effect, and when it was challenged it was proper for appellees to show by oral evidence how it came to be attached to the policy. It is to be noted also that section 18 of the application, which states that

the premium rate is to be sixty cents for each $100 of wages, also states that the estimated expenditure for wages for the term of the policy, is $22,500. This apparently contemplates the payment of the premium named on the estimated wages and there is nothing in the application to show anything to the contrary. The application and the printed slip are in entire harmony, while that portion of the policy which provides for additional premium if the wages paid should in fact be more than the amount estimated, does not appear to be in any way contemplated by the application.

In the case of London Guarantee and Accident Company, Limited, v. Mo. & Ill. Coal Company, 103 Mo. App. 530, the same corporation which is appellant in this case, sued the coal company for additional premium upon a policy taken by the same R. Reynolds Moreton. In that case however there was no slip attached to the policy before it was delivered but Moreton, when the policy was delivered, gave the insured a letter signed "Frank C. Case, General Agent," and underneath the name "R. Reynolds Moreton," stating that at the expiration of two policies issued at the request of the coal company (including the one then in question) they should be taxed only at the rate of forty cents per $100 of the pay roll expended, whereas the application and the policy fixed the premium at sixty-five cents on each $100 of wages. This letter was not attached to the contract, was dated several days after the date of the contract and does not purport to have been made on behalf of the insurance company. The trial court refused to admit the letter in evidence and its action was approved by the court of appeals. That case differs, however, very materially from the one before us where the slip in reference to the amount of the premium was in entire harmony with the application made by appellees and was made a part of the policy before the latter was delivered, and without which the policy would not have been accepted.

The question then arises, did Moreton hold such rela-

tions to the company that they were bound, under the circumstances, by his act notwithstanding the statement in the policy, that no condition or provision thereof, should be waived or altered by any one unless by written consent of the general manager.

In John Hancock Life Insurance Company v. Schlink, 175 Ill. 284, it is held that an agent appointed by the state agent of an insurance company, was the agent of the company and not of the state agent and that if the agent so appointed had power to solicit insurance, forward it to the company and receive the policy when issued, collect the premium and deliver the policy, he had power to waive a condition of the policy, notwithstanding that power was negatived by the provisions of the policy and his contract of employment. This doctrine is also approved in Milwaukee Mechanic's Insurance Company v. Schallman, 188 Ill. 213. In Eclectic Life Insurance Company v. Fahrenkrug, 68 Ill. 463, it is said : "It is insisted  *  *  *  by the terms of the policy, the agents are prohibited from altering or discharging contracts, or waiving forfeitures. This objection we do not deem tenable. The question in cases of this kind is not what power did the agent in fact possess, but what power did the company hold him out to the public as possessing  *  *  *  It is immaterial what may have been said in the policy in regard to the payment of the premium. It was within the power of the company, acting through its agents, to change entirely the mode of or dispense with the payments as provided by the policy, and adopt a different mode and time of payment."

In Phenix Insurance Company v. Stocks, 149 Ill. 319, it is said : "It has been repeatedly held by this court that an agent, although local in respect of the territory in which he operates, who is clothed with general power to solicit and make contracts of insurance for the company, is so far a general agent that notice to him of facts affecting the contract, is notice to the company."

This court in Metropolitan Life Insurance Company v. Sullivan, 112 Ill. App. 500, where the insured had engaged

in the sale of liquor contrary to the terms of his policy, which fact was known to the agents of the insurance company, who afterwards collected the premiums, said: "Appellant further insists that notice to its agents, Hanifan and McCarthy, was not notice to it and that it is therefore not bound by their acts. The proofs in the case showed that they were clothed by appellant with power to solicit and sell insurance, deliver policies and collect premiums. They were therefore general agents and as such had power to waive conditions of the policy."

The evidence is that Frank C. Case who countersigned the policy was a general agent of appellant and he testified that Moreton was engaged in soliciting and negotiating for insurance under him for the London Guaranty and Accident Company, appellant, at or near St. Louis and that policies were sometimes delivered and premiums collected by him; that in negotiating and procuring the insurance in controversy, Moreton acted by the authority and on behalf of witness; that if Moreton delivered the policy in question and collected the premium therefor, he was also acting upon authority and on behalf of witness. Mr. Webb, of the firm of general agents for appellant above mentioned, testified that Case had authority to appoint sub-agents to solicit insurance and that he employed Moreton and that the applications for insurance obtained by Moreton were acted upon by Mr. Case of the firm to which witness belonged; that the policies were issued by his firm and countersigned by Mr. Case.

We are of opinion that the evidence in the case fairly shows that Moreton had power to and did solicit insurance, take applications, deliver policies, and collect premiums for appellant and that therefore his relations to appellant were such that his action in waiving the condition of the policy as to payment of further premium than that expressed in the policy by the written agreement attached to the policy, prior to the delivery of the policy and the payment of the premium, was binding upon appellant to such an extent that it cannot now recover for any further or additional

amount than that named in the policy and paid by appellee, and the judgment of the court below will therefore be affirmed.

*Affirmed.*